ORAL ARGUMENT HELD ON APRIL 18, 2017

Case No. 16-1329 (consolidated with 16-1387)
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

SIERRA CLUB, FLINT RIVERKEEPER, AND
CHATTAHOOCHEE RIVERKEEPER,
Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
Respondent,

DUKE ENERGY FLORIDA, LLC, *et al.*,
Respondent-Intervenors.

───────────────────────────────────────────────

On Petition for Review of Orders of the Federal Energy Regulatory Commission,
154 FERC ¶ 61,080 (Feb. 2, 2016) and 156 FERC ¶ 61,160 (Sept. 7, 2016)
_____

***AMICUS CURIAE* BRIEF OF THE FLORIDA RELIABILITY
COORDINATING COUNCIL, INC., SUPPORTING RESPONDENT &
RESPONDENT-INTERVENORS' REQUEST FOR PANEL REHEARING**

Mohammad O. Jazil
David W. Childs
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
850-222-7500 / 850-224-8551 (fax)

*Counsel for the Florida Reliability
Coordinating Council, Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Rule 28 of the D.C. Circuit Rules, the Florida Reliability Coordinating Council, Inc. ("FRCC") states as follows:

### A. Parties and Amici

The Certificate as to Parties, Rulings, and Related Cases in Petitioners' Opening Brief correctly lists all parties and *amici* in this case.

### B. Rulings Under Review

The Petitioners seek review of two orders issued by the Respondent Federal Energy Regulatory Commission as described in Petitioners' Opening Brief.

### C. Related Cases

The case on review has not previously been before this Court or any other court, within the meaning of D.C. Circuit Rule 28(a)(1)(C). At this time, undersigned counsel is not aware of any other cases related to this case within the meaning of D.C. Circuit Rule 28(a)(1)(C).[1]

### D. Rule 26.1 Disclosure Statement

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and the accompanying D.C. Circuit Rules, the Florida Reliability Coordinating

---

[1] Petitioners Sierra Club and Flint Riverkeeper previously petitioned for review of Clean Water Act Section 404 Permits issued to the Southeast Market Pipeline Project in the U.S. Court of Appeals for the Eleventh Circuit, and sought an injunction staying those Permits. The Eleventh Circuit summarily denied this request, and Petitioners Sierra Club and Flint Riverkeeper dismissed their petition.

Council, Inc., certifies that it is a non-profit corporation organized under Florida law, and no corporation owns its stock.

*/s/ Mohammad O. Jazil*
Attorney

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

GLOSSARY.......................................................................................................... vi

IDENTITY AND INTEREST OF *AMICUS CURIAE* ...............................................1

RULE 29 STATEMENT ........................................................................................3

SUMMARY OF THE ARGUMENT ......................................................................3

ARGUMENT ..........................................................................................................4

I.    FERC's recent actions and the need for additional, uninterrupted, and diverse sources of natural gas support remand *without* vacatur...................... 4

    A.    FERC is well on its way to curing the identified deficiencies............. 5

    B.    The public interest favors remand *without* vacatur............................. 7

CONCLUSION......................................................................................................10

CERTIFICATE OF COMPLIANCE.....................................................................12

CERTIFICATE OF SERVICE ..............................................................................13

# **TABLE OF AUTHORITIES**

**CASES**

*Allied-Signal v. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ................................................................................. 4

*EME Homer City Generation, L.P. v. EPA*,
795 F.3d 118 (D.C. Cir. 2015) ................................................................................. 4

*Heartland Reg'l Medical Ctr. v. Sebelius*,
566 F.3d 193 (D.C. Cir. 2009) ............................................................................. 4, 7

*Minnesota v. U.S. Nuclear Reg. Comm'n*,
602 F.2d 412 (D.C. Cir. 1979) ................................................................................. 7

*Myersville Citizens for a Rural Cmty., Inc. v. FERC*,
783 F.3d 1301 (D.C. Cir. 2015) ............................................................................... 7

*North Carolina v. EPA*,
550 F.3d 1176 (D.C. Cir. 2008) ......................................................................... 5, 10

*NRDC v. EPA*,
489 F.3d 1250 (D.C. Cir. 2007) ......................................................................... 5, 10

*Public Emps. for Envtl. Responsibility v. Hopper,*
827 F.3d 1077 (D.C. Cir. 2016) ............................................................................... 7

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 1508 ....................................................................................................... 5

**OTHER AUTHORITIES**

2017 FRCC Load & Resource Plan, (May 31, 2017) ............................................... 9

D.C. Cir. R. 28 ..................................................................................................... i, vi

Fed. R. App. P. 29 ............................................................................................... 3

Fed. R. App. P. 26 ................................................................................................ i

*Federal Energy Regulatory Commission Order Issuing Certificates and Approving Abandonment, 154 FERC P 61080 (Feb. 2, 2016)*
(D.C. Cir. JA-1074) ............................................................................................. 9

Federal Power Act of 1920 (P.L. 66-280) ............................................................ 1

*Fla. Pub. Serv. Comm'n, Proposed Agency Action Order on Florida Power & Light Company's Proposed Sabal Trail Transmission LLC and Florida Southeast Connection Pipelines (October 28, 2013)*
(D.C. Cir. JA-001) ............................................................................................... 9

National Environmental Policy Act of 1969 .................................................. vi, 5

Natural Gas Act of 1938 ................................................................................. vi, 3

*Sabal Trail Application,* (D.C. Cir. JA-54) ........................................................ 10

U.S. Department of Energy, *Learn More About Interconnections* ..................... 2

# **GLOSSARY**

Pursuant to Circuit Rule 28(a)(3), the following is a glossary of acronyms and abbreviations used in this brief:

| | |
|---|---|
| EIS | Environmental Impact Statement |
| FERC | Federal Energy Regulatory Commission |
| Florida PSC | Florida Public Service Commission |
| FRCC | Florida Reliability Coordinating Council, Inc. |
| GDP | Gross Domestic Product |
| NEPA | National Environmental Policy Act |
| NERC | North American Reliability Corporation |
| NGA | Natural Gas Act of 1938 |
| Respondent-Intervenors | Refers collectively to Sabal Trail Transmission, LLC, Duke Energy Florida, LLC, Florida Power & Light Company, Florida Southeast Connection, LLC, and Transcontinental Gas Pipe Line Company, LLC |
| SEIS | Supplemental Environmental Impact Statement |
| SMP Project | Southeast Market Pipeline Project |

# IDENTITY AND INTEREST OF *AMICUS CURIAE*

The Florida Reliability Coordinating Council ("FRCC") works to promote and assure the reliability of the bulk power system in peninsular Florida east of the Apalachicola River. While its members include investor-owned utilities, electric cooperatives, municipal utilities and independent power producers, the FRCC is itself a non-profit corporation organized under Florida law.

The FRCC exists to serve the public interest. The FRCC is one of eight regional reliability councils exercising authority delegated to it by the North American Reliability Corporation ("NERC"). NERC was created following the Northeast Blackout of 1965. Section 215(c) of the Federal Power Act directs NERC – and its regional entities like FRCC – to establish and enforce reliability standards for the Nation's bulk power system.

Among other things, the FRCC has authority – within its service area of peninsular Florida – to do the following:

   a. Enforce regional reliability standards and accompanying variances from those standards;
   b. Maintain a program of proactive monitoring and enforcement of standards;
   c. Collect, analyze, and provide to NERC all necessary data for purposes of reliability assessments; and

1

    d. Develop assessments regarding the reliability of the region's bulk power system generally.

The FRCC is also registered as the Reliability Coordinator and Planning Authority for its region, making the FRCC responsible for:

    a. Continuously monitoring the operation of the bulk power system within the region;

    b. Analyzing the region's bulk power system for specified critical outages;

    c. Identifying and preventing potential violations of applicable reliability limits;

    d. Mitigating operational emergencies;

    e. Coordinating appropriate remedial actions, if necessary; and

    f. Participating in long-range transmission planning.

The FRCC faces unique challenges. Due to the peninsular nature of the FRCC's region, it is connected with the Eastern Interconnection[2] through only one interface composed of eleven transmission circuits. Having only one interface

---

[2] The Eastern Interconnection is one of the two major alternating current or "AC" electric grids in North America, tying together all of the electric utilities from Central Canada east to the Atlantic Coast, from the Atlantic Coast south to Florida, and from the Atlantic Coast west to the foot of the Rockies. *See* U.S. Department of Energy, "Learn More About Interconnections," *available at* https://energy.gov/oe/services/electricity-policy-coordination-and-implementation/transmission-planning/recovery-act-0 (last visited Feb. 3, 2017).

2

with the Eastern Interconnection, with no redundancy or backup interface, makes electric system stability and generation reliability paramount to any discussion regarding Florida's electric system support infrastructure.

The FRCC considers this case to be of special significance because the Southeast Market Pipelines Project ("SMP Project") serves a substantial area of the FRCC region. Within the FRCC region, the SMP Project is already having a positive effect on electric system stability and generation reliability. As such, the FRCC supports the request to keep the SMP Project operational.

## RULE 29 STATEMENT

In accordance with Rule 29(c)(5) of the Federal Rules of Appellate Procedure, the FRCC notes that counsel for the Parties to this case did not author this brief in whole or in part; no Party or its counsel contributed money intended to fund preparation or submission of this brief; and no person – other than the FRCC, its members, or its counsel – contributed money intended to fund preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

In a 2-1 decision, this Court vacated and remanded the Federal Energy Regulatory Commission's ("FERC") Natural Gas Act ("NGA") certification for construction and operation of the SMP Project. Slip Op. at 35. Respondent and Respondent-Intervenors now ask this Court to reconsider the remedy – to turn

vacatur and remand into remand *without* vacatur. The FRCC joins this request. Through its September 27, 2017, Supplemental Environmental Impact Statement ("SEIS"), FERC is well on its way to curing the defects this Court identified and thus has demonstrated a high likelihood of justifying its decision on remand. Given Florida's growing reliance on natural gas, vacatur would also have a substantial disruptive effect on electric system reliability. And so, the FRCC urges this Court to remand FERC's NGA certification *without* vacating that certification.

## ARGUMENT

### I. FERC'S RECENT ACTIONS AND THE NEED FOR ADDITIONAL, UNINTERRUPTED, AND DIVERSE SOURCES OF NATURAL GAS SUPPORT REMAND *WITHOUT* VACATUR.

In deciding whether to vacate a flawed agency action, this Court considers two factors. First, this Court considers "the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand." *Heartland Reg'l Medical Ctr. v. Sebelius,* 566 F.3d 193, 197 (D.C. Cir. 2009) (citing *Allied-Signal v. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993)). Where an agency can "readily cure a defect," this Court "counsels remand without vacatur." *Id.* at 198. Second, this Court considers "the disruptive consequences of vacatur." *Id.* at 197. Vacating agency action is inappropriate where "[v]acatur could cause substantial disruption to the . . . markets that have developed," *EME Homer City Generation, L.P. v. EPA,* 795 F.3d

4

118, 132 (D.C. Cir. 2015), or cause disruptions that harm the public interest. *See, e.g., North Carolina v. EPA,* 550 F.3d 1176, 1178 (D.C. Cir. 2008); *NRDC v. EPA,* 489 F.3d 1250, 1265 (D.C. Cir. 2007) (Rogers, J., dissenting). Here both factors weigh against vacatur of FERC's NGA certification for the SMP Project.

### A. FERC is well on its way to curing the identified deficiencies.

This Court held that FERC erred when it failed to consider (or explain why it could not consider) for purposes of the National Environmental Policy Act ("NEPA") the SMP Project's downstream emissions. Slip Op. at 18-27. Specifically, according to this Court, emissions from natural gas transported through the pipelines and burned at new and existing natural gas-fired electric generation facilities in Florida are "reasonably foreseeable." *Id.* at 19 (citing 40 C.F.R. § 1508.8(b)). This makes the emissions an "indirect effect" of the SMP Project. *Id.* FERC's Environmental Impact Statement ("EIS"), in turn, "should have either given a quantitative estimate of the downstream greenhouse emissions that will result from burning the natural gas that the pipelines will transport or explained more specifically why it could not have done so." *Id.* at 24. This Court further concluded that FERC should have explained in its EIS why a tool developed to quantify the costs associated with a project's carbon emissions – the Social Cost of Carbon tool – is not useful for NEPA purposes. *Id.* at 27.

5

On September 27, 2017, FERC prepared and made available a supplement that addresses the deficiencies in its earlier EIS. *See* Exhibit D to Respondent-Intervenors' Addendum Accompanying Petition for Rehearing. This draft SEIS "estimates the greenhouse gas emissions generated by the SMP Project's customers' downstream facilities, describes the methodology used to determine these estimates, discusses the context for understanding the magnitude of these emissions, and addresses the value of using the Social Cost of Carbon tool." *Id.* at 1. Among other things, the SEIS provides that, as of May 2017, "natural gas represents Florida's largest electric generation source at 69 percent of total generation." *Id.* at 5. Over the next 5 years, this share is expected to increase as Florida retires 2,718 megawatts ("MW") of coal-fired power generation and 34 MW of fuel oil generation. *Id.* Taking into account a reduction in emissions from retiring facilities, and considering operational emissions at new and existing facilities (or Net PTE emissions), FERC estimates that the SMP Project increases Florida's emissions by 3.7 percent from a 2014 baseline level. *Id.* at 6-7. FERC concludes that this "would not result in a significant impact on the environment." *Id.* at 5. In the SEIS, FERC also provides an explanation for not using the Social Cost of Carbon tool for "any project-level NEPA review." *Id.* at 8.

While the SEIS is not yet final, *id.* at 2, it specifically addresses this Court's concerns. The SEIS shows that the agency can readily cure – and perhaps has

already cured – the NEPA-related defects in its action by considering downstream emissions, and explaining its decision not to use the Social Cost of Carbon tool. Remand *without* vacatur is thus appropriate. *See Heartland,* 566 F.3d at 197-98. Remand *without* vacatur is especially appropriate because NEPA requires only a hard look at environmental effects; "NEPA does not compel a particular result." *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1324 (D.C. Cir. 2015). The SEIS shows that FERC has undertaken a hard look. App. at 1-9; *cf. Public Emps. for Envtl. Responsibility v. Hopper,* 827 F.3d 1077, 1083-84 (D.C. Cir. 2016) (explaining that NEPA violation "does not necessarily mean that the project be halted"); *Minnesota v. U.S. Nuclear Reg. Comm'n,* 602 F.2d 412, 418 (D.C. Cir. 1979) (declining to vacate license amendments despite NEPA violation because it "would effectively shut down [nuclear power] plants").

**B.     The public interest favors remand *without* vacatur.**

As a non-profit committed to promoting and assuring the reliability of the bulk power system in peninsular Florida, the FRCC concerns itself with the public interest. Allowing the SMP Project to continue transporting natural gas furthers the public interest. Ceasing ongoing operation through vacatur of the SMP Project's NGA certification would harm the public interest.

Currently, natural gas generation accounts for over 60 percent of Florida's fuel mix. From an electric generation perspective, Florida is natural gas country.

7

But Florida has no native gas production. Florida must import the fuel it relies on most. Before the SMP Project, only two interstate natural gas pipelines supplied over 90 percent of the natural gas transported into the FRCC region – that area of Florida east of the Apalachicola River. These two natural gas pipelines remain almost fully subscribed.



In recent years, however, Florida (like much of the rest of the nation) has moved towards increasing reliance on natural gas. Economic and regulatory pressures simply make coal and oil-based electric power generation less viable,

8

particularly with respect to new electric power generation. As the third largest state in the Nation by population, with a GDP expected to exceed $1 trillion by the end of the year, Florida's electric capacity needs fueled by natural gas are projected to increase over 8,000 MW in the coming years.[3] Florida explicitly recognized its need for new gas-based generation – and thus, the pipelines to deliver the gas – nearly four years ago.[4] This need did not diminish while the SMP Project went through its multi-year permitting process. To the contrary, FERC reaffirmed the need for new gas-based generation.[5] As such, the SMP Project provides much-needed additional supply for an essential fuel delivery system.

In addition to meeting needs to satisfy load growth, the now operational SMP Project provides an important reliability benefit to Florida. The SMP Project provides redundancy for the system – it provides additional infrastructure to guard against supply disruptions if one of the two other pipelines experiences a failure due to rupture or break.

---

[3] 2017 FRCC Load & Resource Plan, approved on May 31, 2017.

[4] Florida Public Service Commission, Proposed Agency Action Order on Florida Power & Light Company's Proposed Sabal Trail Transmission LLC and Florida Southeast Connection Pipelines, (October 28, 2013) (D.C. Cir. JA-001, at -003).

[5] Federal Energy Regulatory Commission Order Issuing Certificates and Approving Abandonment, 154 FERC P 61080 (Feb. 2, 2016) (D.C. Cir. JA-1074, at ¶¶ 12-14, 20-22, 31,76, 81, and 86-88).

9

The SMP Project also diversifies Florida's sources of natural gas. As the map below shows, the Sabal Trail pipeline, which this Court called "the linchpin of the [SMP] Project," Slip Op. at 3, "allow[s] natural gas users in the region to diversify access to growing natural gas supplies by providing the region with direct access to diverse and substantial gas supplies at the Transco Station 85." Sabal Trail Application. at 5 (D.C. Cir. JA 54). The two other pipelines – Florida Gas Transmission and Gulfstream – do not provide similar access. *Id.*

The SMP Project helps satisfy Florida's need for additional, uninterrupted, and diverse sources of natural gas, and provides a reliable resource for the natural gas necessary for the safety, security, and economic well-being of Florida's over 21 million people. In doing so, the SMP Project improves the reliability of Florida's electric system. Disruption in supply, no matter how minor, could harm the public interest. The FRCC thus asks this Court not to vacate FERC's NGA certification for the SMP Project. *See, e.g., North Carolina,* 550 F.3d at 1178 (remanding rule without vacatur after granting rehearing because realizing environmental benefits from a flawed rule would still serve the public interest); *NRDC,* 489 F.3d at 1265 (Rogers, J., dissenting) (urging same).

## CONCLUSION

Electricity makes much of Florida habitable. The SMP Project improves the reliability of Florida's electric system. So, as FERC works to fix defects in its

agency action, allowing the SMP Project to operate serves the public interest. Vacatur runs headlong against the public interest. Accordingly, the FRCC asks this Court to reconsider the prior remand with vacatur of FERC's NGA certification and instead remand without vacatur of FERC's NGA certification.

        Respectfully submitted by:

        */s/ Mohammad O. Jazil*
        Mohammad O. Jazil
        mohammadj@hgslaw.com
        David W. Childs
        davidc@hgslaw.com
        HOPPING GREEN & SAMS, P.A.
        119 South Monroe Street, Suite 300
        Tallahassee, Florida 32301
        850-222-7500 / 850-224-8551 (fax)

        *Counsel for the Florida Reliability*
October 10, 2017        *Coordinating Council, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type, volume, and font limitation of Fed. R. App. P. 32(a)(7)(B) and 29(d) because the relevant portion of this *amicus* brief contains 2,134 words, which is less than the maximum length authorized by Fed. R. App. P. 32(a)(7)(B). The brief was prepared using 14-point font.

                                                          */s/  Mohammad O. Jazil*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this brief has been furnished to all counsel of record through the court's CM/ECF System on October 10, 2017.

*/s/  Mohammad O. Jazil*